**Shelley HERSHLEY and Roy Hershley, Plaintiffs/Appellants,**

v.

**Merlin D. BROWN, Defendant/Respondent.**

**No. WD 33776.**

Missouri Court of Appeals, Western District.

June 21, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Aug. 2, 1983.

Stephen W. Mendell, St. Joseph, Dale, Flynn, Mendell & Barnes, for plaintiffs/appellants.

Darwin E. Johnson, Kansas City, Jane E. Hart, Linde, Thomson, Fairchild, Langworthy, Kohn & Van Dyke, P.C., for defendant/respondent.

Before WASSERSTROM, P.J., and TURNAGE and CLARK, JJ.

TURNAGE, Judge.

Shelley and Roy Hershley filed an action against Dr. Merlin Brown and Richard Wolfe Medical Instruments. The trial court sustained the defendants' motion to dismiss the claim on grounds that Missouri does not recognize actions for wrongful conception, and that the action was barred by limitations. The Hershleys appealed, claiming that because this case involved a foreign object, it was not time barred, that the statute of limitations was tolled because of Dr. Brown's fraudulent concealment, and that Missouri recognizes wrongful conception [1] claims. Affirmed in part and reversed in part.

The circumstances which gave rise to this case began in 1977, when the petition alleg-

---

1. This term is synonomous with the term wrongful pregnancy.

es that Shelley Hershley and her husband, Roy Hershley, consulted with Dr. Merlin Brown regarding the possibility of Mrs. Hershley's undergoing a tubal ligation to become sterile. Dr. Brown allegedly informed the Hershleys that he would perform a bilateral tubal ligation by burning, cauterizing, or otherwise removing portions of Mrs. Hershley's fallopian tubes.

The petition alleges that Dr. Brown performed a surgical sterilization procedure on Mrs. Hershley on December 27, 1977, and that in October of 1980, Mrs. Hershley conceived a child by her husband. The child came to term in July of 1981.[2] The petition further alleges that not until after Mrs. Hershley had conceived did she and her husband become aware of the fact that rather than burning, cauterizing, or otherwise removing portions of Mrs. Hershley's tubes, Dr. Brown had performed the sterilization procedure by inserting a tubal ring instrument manufactured and distributed by Richard Wolfe Medical Instruments.

In October of 1981, Mr. and Mrs. Hershley filed suit against Dr. Brown and Richard Wolfe Medical Instruments. Their petition contained counts by both Mr. and Mrs. Hershley alleging strict liability, negligent installation of a foreign object, and fraudulent misrepresentation and concealment of a battery. The defendants moved to dismiss the case on the ground that it failed to state a claim upon which relief could be granted, and that the claim was barred by the statute of limitation set forth in § 516. 105 RSMo 1978.[3] The trial court granted these motions.

■ The scope of review in appeals from the granting of a motion to dismiss a petition for failure to state a claim upon which relief can be granted is well settled. The petition is to be construed favorably to the plaintiffs, giving them the benefit of every reasonable and fair intendment in view of the facts alleged. *Ingalls v. Neufeld,* 487 S.W.2d 52, 54[4] (Mo.App.1972). If the facts pleaded and all reasonable inferences

to be drawn therefrom, viewed most favorably from the plaintiff's point of view, show any ground for relief, the plaintiff's petition should not be dismissed for failure to state a claim. *Burckhardt v. General American Life Insurance Company,* 534 S.W.2d 57, 63[5] (Mo.App.1975).

■ Appellate courts should be reluctant to construe the law on the basis of the allegations of the pleadings alone. Attempts to do so are only theoretical exercises, in that the evidence in the case is, as of that time, unknown. *Engleman v. City of Dearborn,* 544 S.W.2d 265, 268[3] (Mo.App. 1976). Thus, if the plaintiff's petition alleges and invokes principles of substantive law which may entitle him to relief, the motion to dismiss is not to be granted. *Ingalls v. Neufeld,* 487 S.W.2d at 54[4].

The first count of the petition alleges that both Richard Wolfe Medical Instruments and Dr. Brown should be held strictly liable for the unsuccessful sterilization of Mrs. Hershley, because the Wolfe ring was defective. At the oral argument of this appeal, the Hershley's counsel announced that they were dismissing their appeal on their claim against Richard Wolfe Medical Instruments. Thus, the appeal from the dismissal of this count hinges on the applicability of the strict liability doctrine to physicians.

While no Missouri case has addressed this issue, leading cases from other jurisdictions have held that physicians may not be held liable under this theory. One such case is *Hoven v. Kelble,* 79 Wis.2d 444, 256 N.W.2d 379 (1977). There, the court ruled that a physician was not liable for injuries suffered by a patient in the course of a lung biopsy.

■ One theory advanced by the plaintiff was that the physician was strictly liable for allegedly defective medical services rendered. Noting that it had found no decision of any court applying the strict liability doctrine to the rendition of professional medical services, the *Hoven* court affirmed

---

**2.** There is no indication in the record that this child was not normal and healthy.

**3.** All sectional references are to Missouri's Revised Statutes, 1978.

the trial court's sustaining of demurrers to the strict liability cause of action, offering the following support for its decision:

Medical services are an absolute necessity to society, and they must be readily available to the people. It is said that strict liability will inevitably increase the cost for medical services, which might make them beyond the means of many consumers, and that imposition of strict liability might hamper progress in developing new medicines and medical techniques. 256 N.W.2d at 391.

Another leading case which discusses the applicability of the strict liability doctrine to physicians in *Carmichael v. Reitz,* 17 Cal.App.3d 958, 95 Cal.Rptr. 381 (1971), which held that the treating physician was not liable under a theory of strict liability in tort for pulmonary embolisms and thrombophlebitis allegedly suffered by the plaintiff as the result of a drug which the physician prescribed. The *Carmichael* court stated that if an injury results but if no negligence or fault is shown, liability without fault may not be imposed to find the medical doctor liable.

This court is persuaded by the doctrines expressed in *Hoven* and *Carmichael,* and refuses to apply the strict liability doctrine to physicians. Thus, the trial court properly dismissed the first count of Mrs. Hershley's petition, which alleged a cause of action against Dr. Brown on a theory of strict liability.

■ Because this petition involves claims of negligence and malpractice on the part of Dr. Brown, it is governed by § 516.105, the statute of limitations for actions against health care providers. That section provides that all such actions must "be brought within two years from the date of occurrence of the act of neglect complained of...." One exception to this rule [4] provides that:

[I]n cases in which the act of neglect complained of is introducing and negligently permitting any foreign object to remain within the body of a living person,

the action shall be brought within two years from the date of the discovery of such alleged negligence, or from the date on which the patient in the exercise of ordinary care should have discovered such alleged negligence, whichever date first occurs.

To come within the tolling provision set out above, the act of negligence complained of must be "introducing and negligently permitting any foreign object to remain within the body...." To fall within this tolling provision, the petition must allege that the object was introduced and negligently permitted to remain in the body. This situation is distinguished from one in which the foreign object is intentionally introduced in the body and is intended to remain there, although the procedure itself is performed in a negligent manner. Negligence of the latter type does not fall within the tolling provision of § 516.105.

■ Count two of the Hershley's petition alleges that Dr. Brown advised Mrs. Hershley that he would accomplish her sterilization by burning, cauterizing, and removing portions of her fallopian tubes, but that he instead performed her sterilization by use of a Wolfe ring instrument without advising her that he had implanted a foreign object in her body. The court further states that Dr. Brown "negligently installed and implanted a Wolfe ring instrument," and alleges damages as a direct result of that act. Thus, it pleads that the ring was implanted in a negligent manner rather than that it was negligently permitted to remain in Mrs. Hershley's body.

As stated above, the negligent performance of a surgical procedure is subject to the two year limitations period, and it is only when a foreign object is introduced and negligently permitted to remain in the body that the tolling provision comes into play. The allegation here is that Dr. Brown negligently performed the procedure by which the Wolfe ring was implanted, rather than that it was negligently permitted to

4. The only other exception mentioned in the statute itself relates to minors under the age of ten, who have until their twelfth birthday to bring action.

remain in the body. Thus, the tolling provision does not apply, and count two is subject to the two year statute of limitations and was properly dismissed.

In counts three and four of the petition, Mrs. Hershley alleges that Dr. Brown performed a different surgical procedure on her than the one which she had consented to, thus committing a battery, and that he fraudulently concealed that fact from her. An operation without a valid consent constitutes a battery, and this is true even if the surgery is performed without negligence. *Rainer v. Buena Community Mem. Hospital,* 18 Cal.App.2d 240, 255, 95 Cal.Rptr. 901, 910 (1971). The petition alleged facts showing a battery under this test.

It is well established that fraudulent concealment of medical malpractice constitutes an improper act under § 516.280,[5] and that that section may be applied to toll the running of § 516.105's [6] two year limitation period until the fraud is discovered or could have been discovered through reasonable diligence. *Swope v. Printz,* 468 S.W.2d 34, 42[15] (Mo.1971). Thus, it is necessary to determine if the petition sufficiently pleads facts to demonstrate that the statute of limitations is tolled by fraudulent concealment which would constitute improper acts under § 516.280.

In order to establish the improper act of fraudulent concealment of a medical malpractice cause of action and toll the running of the statute of limitations, the following facts must be alleged and proved in cases which involve an intentional battery under the circumstances here: (1) that in performing the surgery, the defendant performed a surgical procedure different from that to which the plaintiff consented; (2) that the defendant thereby performed a surgical procedure without consent; (3) that the defendant had actual knowledge that he performed a procedure for which he did not have consent; (4) that with that knowledge, the defendant intended to conceal from the plaintiffs the fact that they had a claim against the defendant for malpractice by reason thereof; (5) that the defendant's acts were fraudulent; and (6) that the plaintiffs were not guilty of lack of diligence in not sooner ascertaining the truth with respect to the situation. *Swope* at 38–39[1].

Thus, the issue which must be addressed in order to determine whether the petition pleads facts sufficient to show fraudulent concealment is whether Dr. Brown intentionally concealed from Mrs. Hershley the fact that he performed surgical procedures different from those to which she had consented, and whether Mrs. Hershley was guilty of lack of diligence in not sooner ascertaining the truth.

While there is no Missouri case on point, the case law of other jurisdictions holds that such an action on the part of a physician does indeed constitute fraud. One case which illustrates this principle is *Tabor v. Clifton,* 63 Ga.App. 768, 12 S.E.2d 137 (1940), where a physician concealed from a patient the fact that he had surgically removed organs which the plaintiff had not authorized him to remove. The *Tabor* court held:

> [W]here the patient did not know that the physician in performing the operation had exceeded the contract . . ., but where the physician knew this, the concealment of these facts by him from the patient, and his failure to inform the patient thereof, constituted a fraud on the patient. *Id.* at 139[1].

More specifically, there is a line of cases which holds that a physician's failure to inform a patient that he implanted a foreign object in the patient's body, when such an object was not consented to, constitutes fraud. *See generally* 70 C.J.S. *Physicians and Surgeons* § 48. In *Bryson v. Aven,* 32 Ga.App. 721, 124 S.E. 553 (1924),

---

**5.** Section 516.280 provides: "If any person, by absconding or concealing himself, or by any other improper act, prevent the commencement of an action, such action may be commenced within the time herein limited, after the commencement of such action shall have ceased to be so prevented."

**6.** Formerly, at the time the *Swope* case was decided, § 516.140.

the court concluded that the physician's failure to inform the patient that he had surgically inserted a pessary in her womb constituted fraud. This doctrine was echoed in *Hinkle v. Hargens,* 76 S.D. 520, 81 N.W.2d 888 (1957), where the court held that the physician acted fraudulently in failing to inform the patient that a surgical needle was implanted in his body. These cases illustrate that the physician has a duty to inform the patient that an unauthorized foreign body was implanted even if the implantation was medically necessary. *See Smith v. Zeagler,* 116 Fla. 628, 157 So. 328, 329–30[5] (1934), and Note, "Malpractice—When Statute of Limitations Commences in Malpractice Actions," 9 MO. L.REV. 103–04 (1944).

▪▪▪ This court holds that fraud results from a physician's intentional concealment from a patient of the fact that he performed a surgical procedure different from that consented to. The specific act in this case was Dr. Brown's alleged concealment of the fact that he had implanted an object in Mrs. Hershley's body without her consent. Such an act, if found by the fact finder to have occurred, constitutes an improper act under § 516.280, and tolls the running of the applicable limitation period. Because all of the necessary allegations were set forth in the petition and because there is nothing in the pleading to indicate that Mrs. Hershley was guilty of a lack of diligence in not sooner learning that the Wolfe ring was implanted, this case satisfies the *Swope* criteria.

Counts three and four plead sufficient facts to meet the requirements of fraudulent concealment or improper acts, as set out above. If proven, such facts would be sufficient to submit the question to a jury of whether or not Dr. Brown knowingly performed a different surgery on Mrs. Hershley than the one to which she consented, fraudulently concealed such fact from her, and failed to inform her that he had performed a different procedure. On finding such facts, the jury would be authorized

to find that the limitation period of § 516.-105 had been tolled. *Swope* 468 S.W.2d at 42[15]. Thus, count four pleads facts sufficient to state a cause of action for battery, and since count three pleads facts showing improper acts consisting of fraudulent concealment, the action for battery is not barred on the pleadings by the limitation period of § 516.105.

Mr. Hershley's four counts of the petition follow his wife's counts. In light of the substantive similarity of the counts, it follows from the previous discussion that Mr. Hershley's strict liability count and the count for negligently implanting the ring were properly dismissed, while his battery count, coupled with the pleading of fraudulent concealment, was improperly dismissed.

▪▪▪ The petition alleges that as a direct and proximate result of the battery, Mrs. Hershley became pregnant. The petition therefore prays damages for wrongful conception. This satisfies the requirement that the damages requested in a petition be alleged to be the direct and proximate result of the wrong which is the subject of the petition. However, the trial court held that wrongful conception is not recognized in this state, and that the damages arising therefrom are too difficult to ascertain. Both of these issues were directly addressed in *Miller v. Duhart,* 637 S.W.2d 183 (Mo. App.1982),[7] where the court held that Missouri recognizes wrongful conception and spelled out the items to be considered in arriving at the amount of damages. In light of *Miller,* this court holds only that wrongful conception was well pleaded as a direct and proximate result of Dr. Brown's acts alleged in the battery count. It will, of course, be up to the Hershleys to offer proof of their allegations, up to the trial court to decide if such proof is to be submitted to the jury, and up to the jury to decide if these allegations have been proven by a preponderance of the evidence.

The judgment of dismissal as to counts 1, 2, 5, and 6 is affirmed. The judgment as to

---

**7.** In his brief, Dr. Brown argues that the discussion of wrongful conception was mere dicta, in that the action was held to be time barred. This court is convinced that deciding that wrongful conception was a recognized category of medical malpractice was not dicta, because it was a necessary step in deciding which statute of limitations governed in the case.

counts 3, 4, 7, and 8 is reversed and this cause as to those counts is remanded for further proceedings.

All concur.

On Motion for Rehearing or Transfer

PER CURIAM.

Dr. Brown has filed a Motion for Rehearing or Transfer to the Supreme Court. He contends that the opinion severely restricts physicians in the exercise of their best medical judgment in the method to be employed in performing an operation. He contrasts the method by which the operation is to be performed with the nature of the operation itself. Thus, Dr. Brown contends the operation which Mrs. Hershley consented to in this case was a sterilization and the method by which that operation was to be performed was a matter of medical judgment resting solely in the discretion of Dr. Brown.

This argument misconstrues both the pleading and the opinion. The opinion points out that Mrs. Hershley pleaded that the operation to which she consented was a cauterization and cutting of the fallopian tubes. She alleges this operation was not performed but an operation was performed by which the Wolfe ring was inserted. The opinion treats the operation to which Mrs. Hershley consented and the one actually performed as being different operations in conformity with the pleading. In *Wall v. Brim*, 138 F.2d 478, 481 (5th Cir.1943), the court held that an operation performed without the patient's consent is a battery or trespass. The court stated:

[T]hat if a physician advises his patient to submit to a particular operation and the patient weighs the dangers and results incident to its performance and finally consents, he thereby in effect enters into a contract authorizing his physician to operate to the extent of the consent given but no further. The same principle which supports the holding that a surgeon performing an operation without his patient's consent, express or implied, commits a battery or trespass for which he is liable in damages, also supports the holding that a surgeon many not perform an operation different in kind from that consented to or one involving risks and results not contemplated.

See also 70 C.J.S. *Physicians and Surgeons* 48g, page 967 (1951); Powell, *Consent to Operative Procedures,* 21 Md.L.Rev. 189, 194 (1961).

In *Lloyd v. Kull,* 329 F.2d 168, 170[4] (7th Cir.1964), the court stated that a written consent for an operation does not constitute a consent for any other operation when there is no evidence that a necessity arose during the authorized operation.

Construing the petition favorably to Mrs. Hershley, as this court must at this stage of the proceedings, the petition alleges a different operation was performed than the one for which consent was given. The opinion does not limit the physician in the exercise of his medical judgment in performing an operation but simply restates the well established law that a physician may not perform an operation different from the one for which consent was given in the absence of evidence showing a medical necessity to do so.

The Motion for Rehearing is overruled and the Motion to Transfer is denied.